# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RESEARCH AIR, INC.,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-623 (RMC)** |
| ) | |
| **GALE A. NORTON, Secretary,** ) | |
| **Department of the Interior,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS</u>

On December 13, 2001, Charles R. Arment, president of Research Air, Inc., flew a low-altitude mission to count endangered fish in the Green River near Vernal, Utah, as part of the U.S. Fish and Wildlife Service's ("FWS") Colorado River Fish Project. Mr. Arment passed 60 feet underneath a power line and touched the ice on the river with the wheels of his plane. He assured his passenger, a FWS biologist, that there was nothing hazardous in this flight path. Department of Interior ("DOI") officials disagreed and recalled Mr. Arment's pilot card, without which he was no longer authorized to work under DOI contract. Mr. Arment and Research Air filed suit in U.S. District Court in Montana, but their suit was dismissed with prejudice when Mr. Arment failed to comply with various court orders. *Research Air, Inc. v. Norton*, No. CV-03-54-BU-RFC (D. Mont. Aug. 13, 2003) (Order). Mr. Arment files the same suit here — more words, same allegations — together with new claims under the Privacy Act, 5 U.S.C. § 552a, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–44.

Before the Court is the Government's Motion to Dismiss, which argues that (1) *res judicata* and the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, bar any claims based on the recall of Mr. Arment's pilot card; (2) the Privacy Act and FOIA claims should be dismissed because Plaintiffs failed to exhaust their administrative remedies; and (3) the Court lacks jurisdiction over the ESA claim because Plaintiffs failed to provide proper notice of intent to sue.  For the reasons explained below, the Court will grant in part and deny in part the Government's Motion to Dismiss. Plaintiffs' various constitutional and statutory challenges to the recall of his pilot card, and his ESA claim, will be dismissed; their Privacy Act and FOIA claims, however, will survive.

## I.  FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff Charles R. Arment resides in Gallatin County, Montana.  Compl. ¶ 9.  He is the President and sole owner of Research Air Inc., *id.*, a Montana corporation, *id.* ¶ 10.  "Research Air is a specialized business dependent on low-level flight contracts to track and survey fish, waterfowl, and wildlife for tribal, state, and federal governmental agencies."  *Id.*  Mr. Arment held an interagency pilot qualification card ("pilot card") from sometime in 1982 to March 27, 2002, when it was recalled by the DOI's Office of Aircraft Services ("OAS"), now known as the Aviation Management Directorate.  *Id.* ¶¶ 4, 12, 21.  During this period, OAS managed aviation matters for DOI on a national scale, covering all 50 states and U.S. territories and possessions.  *Id.* ¶ 12.  The pilot card authorized Mr. Arment to operate certain specialized flights for DOI and the Department of Agriculture from June 11, 2001, until May 31, 2002.  *See id.* ex. 1 (pilot card and aircraft data approval card).  Other federal and state agencies and Indian tribes also rely on the DOI pilot card as a certificate of capability.

On December 13, 2001, Mr. Arment flew a low-level special use operation for FWS, a component agency of DOI, to locate endangered Colorado pikeminnow by detecting radio signals emitted from transmitters embedded in fish swimming in the iced-over river below. *Id.* ¶ 47. This mission required Mr. Arment "to fly as low as 50 feet [above ground level] on December 13, 2001, to locate the endangered species . . . because of weak frequencies emitting from the fish underneath the ice. He . . . locat[ed] eight fish[,] including one as they passed 60 feet underneath the power line." *Id.* Along the way, Mr. Arment intentionally rolled the wheels of his plane on the ice of the river, leaving a track in the snow that he pointed out to the FWS biologist as they regained altitude. *Id.* ex. 6 at 2 (2/24/03 OAS letter) (quoting Mr. Arment's statements that he " 'rolled [his] wheels' " on the river ice, a move that " 'wasn't inadvertent, it was a decision [he] made.' ").

Neither Mr. Arment nor his passenger reported his flying under the power line or touching the river ice. The incident was eventually reported to OAS on February 25, 2002, by another observer. *See id.* ex. 4 at 1. OAS regarded it as a "serious aviation hazard" and immediately began an investigation. *Id.* In March 2002, defendant Robert Galloway, OAS Aviation Safety Manager, contacted Mr. Arment by telephone and letter concerning an investigation into the circumstances of the December 13, 2001, flight. In part, Mr. Galloway's letter stated:

> It has been determined that during this flight to locate fish while using radio telemetry equipment you flew under a set of power lines on the Green River and contacted the surface of the frozen river. This event represents a serious aviation hazard as defined in the Office of Aircraft Services' Aircraft Rental Agreement (ARA), paragraph C 10.1.3, and is being investigated as an Incident With Potential in accordance with ARA paragraph C 10.1.6.
>
> . . . .

> . . . [P]ending completion of this investigation it is requested that
> you return your Interagency Pilot Qualification Card . . . .

*Id.* ex. 3.  Mr. Arment was interviewed about the event on April 5, 2002.  *See id.* ex. 4.  Nearly a year

later, on February 24, 2003, Defendant Steve R. Smith, Director of OAS's West Area Office, wrote

to Mr. Arment with additional questions.  *Id.* ex. 5.  Finally, on May 6, 2003, Mr. Smith concluded

that Mr. Arment had "fail[ed] to keep and maintain programs necessary to assure safety of ground

and flight operations as directed by the ARA," conduct he found "unacceptable." *Id.* ex. 6 at 2.  Mr.

Smith directed Mr. Arment to receive more education and training before he would be eligible to

reapply for his pilot card.  *Id.* ex. 6 at 2-3.  Further, Mr. Smith advised that Mr. Arment could request

that the OAS Director reconsider his decision "if additional substantive evidence is presented." *Id.*

ex. 6 at 3.  Mr. Arment did not further pursue this route.

On May 29, 2003, Mr. Arment filed a FOIA request for all agency records related to

him and Research Air, including the administrative record and reports of any investigation OAS had

conducted.  Compl. ¶¶ 181-183.  On June 5, 2003, Mr. Arment's counsel spoke to Leslie Laraway,

a FOIA Officer in DOI, who confirmed that OAS held "extensive" files on Mr. Arment.  Defs.' Mot.

to Dismiss, ex. 1 at 87, 88 [Dkt. #24].  Mr. Arment's counsel then requested a fee estimate.  *Id.* at

87.  By email dated June 9, 2003, Ms. Laraway provided Mr. Arment's counsel with an estimate of

$810.25, and encouraged him to work with Mr. Arment "to modify or narrow the scope of his

request to reduce associated costs." *Id.* at 88.  That email also denied Mr. Arment's request for a fee

waiver, and stated that "OAS cannot begin processing your request until it has received written

assurance of your willingness to pay the fees associated with your request.  See 43 C.F.R. § 2.18(a)."

*Id.*  It continued: "Your request will remain open for 20 days from the date of this email.  After that

time we must assume that if we have not heard [from] you, that you are no longer interested in pursuing this matter, and have effectively withdrawn . . . the FOIA request." *Id.*

The same day, Mr. Arment's counsel wrote to Mr. Smith to complain about what he characterized as an "unacceptable response to my request for the administrative record." *Id.* at 89. In a letter dated June 16, 2003, Ms. Laraway responded: "I recognize your displeasure, but again reiterate that these issues must be addressed and settled before we can begin processing your request. Again, we will leave your request open for 20 working days from the date of this letter. After that time we must assume that if we have not heard from you, that you are no longer interested in pursuing this matter." *Id.* at 87. That letter also specifically stated: "Under 43 CFR 2.18, you may appeal this response by writing to the [FOIA] Appeals Officer . . . . Your appeal must be received no later than 20 workdays after the date of this letter." *Id.* Mr. Arment appealed, through counsel, in a letter dated June 28, 2003, which was received by DOI on July 2, 2003. Pls.' Opp'n ex. 6 (7/30/03 FOIA letter) at 1.

**B. Prior Litigation**

Mr. Arment and Research Air filed suit in the United States District Court for the District of Montana in July 2003. The complaint in that case, *Research Air I*, is Exhibit 1 to the Government's Motion to Dismiss. It advanced ten counts. The first six counts alleged Fifth Amendment substantive and procedural due process violations stemming from the suspension of Mr. Arment's pilot card. *See Research Air I* Compl. Counts I–VI. These counts are repeated in the instant matter, *Research Air II*. *See Research Air II* Compl. Counts I–V and XII.[1] Both *Research*

_____

[1] In *Research Air I*, the complaint alleged, in Count I, "Violation of the Fifth Amendment of the United States Constitution - Denial of Substantive Due Process"; in Count II, "Violation of the Fifth Amendment to the United States Constitution - Denial of Procedural Due Process -

*Air I* and *II* advance counts alleging the same violations of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, stemming from the same set of facts. *Compare Research Air I* Compl. ¶¶ VII–IX *with Research Air II* Compl. ¶¶ VI–XI.[2]  Count X of the *Research Air I* complaint advanced "*Bivens* Constitutional Violations"[3] against Messrs. Galloway and Smith.  Counts XX–XXII in *Research Air II* name the same agency officials under *Bivens* and add Samuel L. Stivison, former Chief, Procurement, OAS.  Thus, aside from some differently styled APA violations that could have been brought earlier, *see supra* note 2, the only new counts in *Research Air II* allege violations of

Inadequate Notice"; in Count III, "Violation of the Fifth Amendment to the United States Constitution - Denial of Procedural Due Process - No Hearing"; in Count IV, "Violation of the Fifth Amendment to the United States Constitution - Denial of Procedural Due Process - No Neutral and Detached Decisionmaker"; in Count V, "Violation of the Fifth Amendment to the United States Constitution - Due Process - Imposition of Sanctions for Violations of Rules Vague on their Face and as Applied to Plaintiffs"; and, in Count VI, "Violation of the Fifth Amendment to the United States Constitution - Unauthorized Taking Without Just Compensation."  The instant complaint in *Research Air II* contains the identical counts with slightly different numbering.

[2] In *Research Air I*, the complaint alleged, in Count VII, "Violation of the Administrative Procedure Act - Agency Action Without Lawful Authority."  This count included an allegation that Defendants had violated "notice and comments" procedures.  *Research Air I* Compl. ¶ 93.  In *Research Air II*, a substantively identical court is titled "Violation of the Administrative Procedure Act -Lack of Notice & Comment and Publication."  The complaints in both Research I (counts VIII and IX) and Research Air II (counts X and XI) allege "Violation of the Administrative Procedure Act - Arbitrary and Capricious Agency Action Lacking a Rational Basis" and "Violation of the Administrative Procedure Act - Agency Action Lacking Substantial Evidence."  Finally, Research II raises three additional counts: in Count VI, "Violation of the Administrative Procedure Act or Officer Mandamus Statute - *Ultra Vires* Adverse Agency Actions"; in Count VII, "Violation of the Administrative Procedure Act or Officer Mandamus Statute - Completely Preempted Adverse Agency Action Contrary to Law"; and, in Count VIII, "APA Violation - Lack of a Valid Procurement Process."  Although these latter three claims are phrased somewhat differently than those in the Research I complaint, each is based on the same nucleus of facts and seeks essentially the same relief: either the return of Mr. Arment's pilot card, *see Research Air II* Compl. ¶¶ 115 (Count VI), 117 (Count VII), or injunctive relief against DOI's requiring that he possess such a card, *see id.* ¶ 128 (Count IX).

[3] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

the Privacy Act (Counts XIII–XVIII); FOIA and the Privacy Act (Count XIX); and the ESA (Count

XXIII).

The *Research Air I* complaint was filed jointly by Michael H. Ditton, an attorney who

lives in Bozeman, Montana, and is admitted to the D.C. Bar but not the Montana State Bar, and

Patrick D. McGee, an attorney in Butte, Montana. Judge Richard F. Cebull denied Mr. Ditton's

motion for admission *pro hac vice* in September 2003. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss,

ex. 2 (cert. petition) at 4-5.[4] Following a hearing on January 30, 2004, Judge Cebell permitted Mr.

McGee to withdraw from the case, *see id.* ex. 2 at 5,[5] and on February 2, 2004, issued an order

directing Mr. Arment to submit the name of new counsel or notify the court of his intention to

proceed *pro se*. Defs.' Mot. ex. 2 (8/13/04 Order in *Research Air I*) at 1; *see also* Pls.' Opp'n ex.

1 (Docket in *Research Air I*) at 8-9.[6] When Plaintiffs failed to respond, Judge Cebull reissued this

---

[4] Judge Cebell relied on L.R. 83.3(e)(2), which excludes resident attorneys who are not members of the Montana State Bar from practicing in federal court. *Id.* at 4. Mr. Ditton is not a member of the Montana Bar because the Supreme Court of Montana has denied him that right, based on his practice experience in Virginia. *See* Defs.' Opp'n to Pls.' Mot. for Sanctions at 2. In the petition for a writ of certiorari filed by Mr. Arment, Mr. Dillon informed the Supreme Court, "Mr. Ditton cannot take and pass the Montana Bar Examination because [the] Supreme Court of Montana refused to let him do so. He has done something about that. *See Ditton v. Supreme Court of Montana*, No. CV-04-27-H-CCL." Pls.' Opp'n at 5 n.7.

[5] Although the record is a bit tricky to reconstruct, it appears that Mr. Arment, displeased with one or both of these rulings, sought writs of prohibition and mandamus from the Court of Appeals for the Ninth Circuit. *Id.* at 5-6. On February 25, 2004, the Ninth Circuit denied those petitions. Mr. Arment's petition for rehearing and suggestion for rehearing en banc were denied as untimely on April 5, 2005. *Id.* at 6-7. His motion to vacate the April 5 order was denied on May 17, 2004. *Id.* at 7. And his cert. petition, which sought review of the Ninth Circuit's February 25, April 5, and May 17, 2004, rulings, was denied by the Supreme Court on November 8, 2004. *In re Research Air Inc.*, 543 U.S. 978 (2004).

[6] Corporations must be represented by counsel. *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993); *see also Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984). Thus, had he chosen to

order on March 30, 2004, and warned — in bold type — that " '[i]f Mr. Arment fails to notify the Court within twenty (20) days of the name of new counsel or his intention to represent himself, this action shall be dismissed.' " Defs.' Mot. ex. 2 at 1.  No response was filed.  *Id.*  The Government filed a motion to dismiss *Research Air I* on June 7, 2004, to which Mr. Arment again failed to respond.  *Id.*  On August 13, 2004, Judge Cebell dismissed *Research Air I* with prejudice pursuant to Federal Rule of Civil Procedure 41(b).  *Id.*

## II. LEGAL STANDARDS

The Government moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Pursuant to Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, Plaintiffs bear the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

A motion to dismiss pursuant to Rule 12(b)(6), on the other hand, challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

proceed *pro se*, Mr. Arment could have represented himself only and not Research Air.

*v. Gibson*, 355 U.S. 41, 45-46 (1957).  The plaintiff need not plead the elements of a *prima facie* case in the complaint.  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).  *Res judicata* is an affirmative defense that is generally pleaded in the defendant's answer, but is also properly brought in a pre-answer Rule 12(b)(6) motion when "all relevant facts are shown by the court's own records, of which the court takes notice."  *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (*res judicata* "may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint"); *see Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (noting that courts have permitted parties to assert *res judicata* under Rule 12(b)(6)).

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action."  *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).  "*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.' " *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  "As the Supreme Court has explained: 'To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Id.* (quoting *Montana*,

440 U.S. at 153-54).  In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).

The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action" for *res judicata* purposes. *U.S. Indus. Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985).  "In addressing the cause-of-action question, the Restatement speaks in terms of a transaction or series of transactions and gives 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id.* (quoting the  Restatement (Second) of Judgments § 23(2) (1982)).  "The Restatement approach reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " *Id.* (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1], at 359 (2nd ed. 1983)).  The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between the two cases, and whether there was a final adjudication on the merits in the prior case. *Id.* at 206.

Because the defense of *res judicata* is of jurisdictional character, courts can and should raise the issue *sua sponte*.  *See Stanton*, 127 F.3d at 77 (D.C. Cir. 1997) ("As *res judicata* belongs to courts as well as to litigants, even a *party's* forfeiture of the right to assert it . . . does not destroy a *court's* ability to consider the issue *sua sponte*.").  Noting that "D.C. courts articulating the

doctrine [of *res judicata*] commonly cite federal cases applying federal law," the D.C. Circuit has "discern[ed] no material differences in the District of Columbia's law of *res judicata* and the federal common law of *res judicata*." *Id.* at 78 n.4.

### III. DISCUSSION

Plaintiffs' claims fall into four general categories: (1) various constitutional and statutory complaints challenging the recall of his pilot card; (2) Privacy Act violations; (3) FOIA claims; and (4) ESA violations. The Court addresses each in turn.

### A. Revocation of the Pilot Card by OAS

Mr. Arment and Research Air have already litigated their claims that OAS improperly demanded the return of Mr. Arment's pilot card. They lost. The Rule 41(b) dismissal of *Research Air I* constituted an adjudication on the merits, and this effort to resuscitate those claims by bringing them 2,000 miles east to a new court must fail. As the record makes plain, these claims satisfy the four *res judicata* elements traditionally applied by this Court: (1) identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action. *See, e.g.*, *Am. Forest Research Council v. Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001); *see also U.S. Indus.*, 765 F.2d at 205.

### 1. Identity of Parties

The parties in *Research Air I* and *Research Air II* are identical or in privity with each other. The Montana suit named Secretary Norton, the DOI, and Messrs. Smith and Galloway of OAS. The instant suit likewise names Secretary Norton, the DOI, and Messrs. Smith and Galloway, but adds as defendants Mr. Stivison, formerly of OAS, and OAS itself. Certainly Mr. Stivison and OAS were "adequately represented by a party to the original action," *Am. Forest Research Council*,

172 F. Supp. 2d at 31, inasmuch as all defendants are entities or officials of the U.S. Government and the claims are identical.  The case law is clear that privity exists between agencies and officers of the United States.  *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government."); *FTC v. Texaco Inc.*, 555 F.2d 862, 924 (D.C. Cir. 1977) (en banc) ("[A]gencies of the same government are in privity with one another.").  Mr. Arment does not contend otherwise.

### 2. Court of Competent Jurisdiction

The U.S. District Court in Montana had jurisdiction over *Research Air I* under the Constitution and federal statutes invoked by the Plaintiffs.  It was plainly a court of competent jurisdiction to rule on the matter, a fact that Mr. Arment has at no time disputed.

### 3. Final Judgment on the Merits

Plaintiffs' argument that Judge Cebull's August 13, 2004, Order dismissing *Research Air I* with prejudice was not a final judgment on the merits is somewhat difficult to follow.  Pls.' Opp'n at 16-26.  At bottom, however, it is clear that Plaintiffs contend the August 13 Order was not an adjudication on the merits because Judge Cebull never actually reached the underlying merits of Plaintiffs' claims.  *Id.* at 24-25.  They urge the Court to find that their suit in Montana was merely administratively closed.  *Id.* at 17.  Although Plaintiffs correctly note that the District of Montana did not literally reach the merits, that court's Rule 41(b) dismissal has the same effect nonetheless.

Rule 41(b) permits a defendant to move for "dismissal of an action or of any claim" for "failure of the plaintiff to prosecute or to comply with these rules or any order of court."  Fed.

R. Civ. P. 41(b).  It further provides: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."  The D.C. Circuit has explained that Rule 41(b) means what it so plainly says: "Under Rule 41(b), a dismissal for failure to prosecute 'operates as an adjudication on the merits' unless the district court in its order 'otherwise specifies.' "  *Proctor v. Millar Elevator Serv. Co.*, 8 F.3d 824, 824 (D.C. Cir. 1993) (per curiam) (quoting Fed. R. Civ. P. 41(b)).  In *Proctor*, the district court had granted the plaintiff's Rule 41(b) motion and dismissed the action, but had not indicated whether its dismissal was with or without prejudice.  *Id.* at 825. Following the plain language of the Rule, the Court of Appeals held that, by operation of Rule 41(b), the action had been dismissed with prejudice.  *Id.* at 824.

Here, as Plaintiffs explain and the *Research Air I* docket makes clear, Defendants in the prior case filed two motions to dismiss: one under Rules 12(b)(1) and 12(b)(6), filed on September 5, 2003, and another under Rule 41(b), filed on June 7, 2004. Pls.' Opp'n at 18 n.5; Pls.' Opp'n ex. 1 (Docket in *Research Air I*) at 5, 10.  As Plaintiffs also recognize, it was the latter motion — under Rule 41(b) — that was the subject of Judge Cebull's August 13, 2004, Order dismissing the case.  Pls.' Opp'n at 18 ("It was . . . the June 7, 2004[,] motion to dismiss . . . that the court actually ruled upon.").  In his August 13 Order, Judge Cebull noted that the Defendants' Rule 41(b) motion was "based upon Plaintiff[s'] failure to comply with the Court's Orders" and recounted that court's careful efforts to encourage Plaintiffs' to comply with its directives — efforts that included express warnings that failure to comply would result in dismissal.  Defs.' Mot. ex. 2 (8/13/04 Order in *Research Air I*) at 3.  Judge Cebull ultimately granted the Defendants' Rule 41(b) motion and

explicitly dismissed the case with prejudice.[7]  *Id.* at 5.

A dismissal "with prejudice" is the functional equivalent of an adjudication on the merits.  *Semtec Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (" 'With prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits.' ") (quoting 9 Wright & Miller, § 2373, at 396 n.4); *Stewart v. United States Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.' ").  In any event, even had the August 13 Order *not* stated that the dismissal of *Research Air I* was with prejudice, it would be deemed an adjudication on the merits by operation of Rule 41(b).  *See Proctor*, 8 F.3d at 824.  Plaintiffs' arguments to the contrary are not persuasive.

### 4. Same Action

Finally, to the extent that Mr. Arment challenges the recall of his pilot card under the Due Process Clause, the APA, *Bivens*, and various other constitutional and statutory grounds, the claims he now asserts simply repeat those brought in *Research Air I*.  *See supra* notes 1-3 and accompanying text (comparing claims).  Certainly, the complaint in *Research Air II* expands upon the factual averments of its predecessor, but in all respects the facts alleged in each action are "related in time, space, origin, or motivation," *U.S. Indus.*, 765 F.2d at 205, and lead, in substance, to identical claims.  Moreover, Plaintiffs' attempt to expand upon some of the APA counts in *Research Air II* is artificial, given that the central Fifth Amendment and APA challenges, plus the *Bivens* claims, remain basically unchanged.  Under the Restatement's "pragmatic, transactional

---

[7]  On August 23, 2004, Plaintiffs moved the District of Montana to reconsider its August 13 Order under Fed. R. Civ. P. 59 and 60.  On November 12, 2004, that court denied the motion to reconsider on the ground that Plaintiffs had failed to seek leave to file such a motion, as required by the local rules.  Pls.' Opp'n ex. 3 (11/12/04 Order in *Research Air I*) at 1-2.

approach" adopted by the D.C. Circuit, these claims constitute the same "cause of action" for *res judicata* purposes. *See U.S. Indus.*, 765 F.2d at 205; *see also Velikonja v. Ashcraft*, 355 F. Supp 2d 197, 201-02 (D.D.C. 2005) (stating that an identity of action exists when cases share the same "nucleus of facts") (citing *Apotex*, 393 F.3d at 210). Mr. Arment had the opportunity to fully litigate these issues in Montana; he cannot now restore a case that was dismissed with prejudice because he has conceived a new APA theory.

* * * * *

Having concluded that the elements of *res judicata* are satisfied as to Counts I–XII and XX–XXII in the instant action, those Counts are barred, and the Court will grant Defendants' motion to dismiss them.[8]   Remaining are Counts XIII–XVIII (Privacy Act), Count XIX (FOIA/Privacy Act), and Count XXIII (ESA), to which the Court now turns.

---

[8] The Court also agrees, for the reasons stated by the Government, that all claims relating to the recall of Mr. Arment's pilot card arise in connection with his contract with DOI and are subject to the exclusive procedures of the Contracts Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* ("CDA"). In short, the Aircraft Rental Agreement ("ARA") entered between Plaintiffs and OAS is the source of the right at stake: the OAS investigation determined that Mr. Arment violated ARA §§ B2.3.1 and C10.3.2; ARA § 1.7.4.2 provides that a pilot card may be cancelled for such violations; and Mr. Arment now complains that his pilot card was improperly revoked and sues for profits he would have earned under the ARA. As in *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985), "[t]he question presented by the complaint could be phrased as whether the contract forbids [cancellation of the pilot card] under these conditions. That the [cancellation] also arguably violates certain other regulations does not transform the action into one based solely on those regulations." *See also B&B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766 (6th Cir. 2005) (en banc). When the CDA applies to a dispute, as it does here, its procedures provide the exclusive remedy, and this Court is without jurisdiction. *See A&S Council Oil Co. v. Lader*, 56 F.3d 234, 241-42 (D.C. Cir. 1995).
      Given the disposition of these claims on the basis of *res judicata*, the Court will not further prolong its opinion. Because of the applicability of the CDA, the Court would find that special factors counsel against creating a *Bivens* remedy here, *see Bush v. Lucas*, 462 U.S. 367 (1983), even were *res judicata* not applicable.

### B. Privacy Act Claims

Plaintiffs complain that DOI's maintenance and retention of records concerning Mr. Arment's past performance and qualifications as a pilot, and disclosure of those record to other federal agencies, constitute an unauthorized collection of information under the Privacy Act. Compl. ¶¶ 153, 157, 162.  He also asserts that these records are not accurate or complete, *id.* ¶ 167, and should have been amended or expunged, *id.* ¶ 172.  He further claims that DOI "failed to account" for disclosures of these records, *id.* ¶ 177, and failed to release records properly, *id.* ¶ 187.

The Government argues that the Privacy Act claims should be dismissed because Mr. Arment failed to exhaust his administrative remedies.  Defs.' Mot. at 31-32.  However, Plaintiffs' attach to their memorandum in opposition a letter signed by Darrell R. Strayhorn, a Privacy Act Appeals Officer in the DOI, which indicates that Plaintiffs, through their counsel, Mr. Ditton, submitted a Privacy Act petition to OAS on January 31, 2005.  Pls.' Opp'n ex. 7 (4/19/05 Privacy Act letter) at 2.  That letter states that it is in "respon[se] to [Mr. Ditton's] March 18, 2005, Privacy Act appeal" and "concludes that [Mr. Ditton] do[es] not have any rights under the Privacy Act to request that the OAS or the [DOI] amend, provide an accounting of, or notify [him] of the existence of any Privacy Act–protected records pertaining to Mr. Arment."  *Id.* ex. 7 at 1.  The Government, in its reply, now recognizes that Plaintiffs did, in fact, file an administrative appeal.  Defs.' Reply at 19 ("It now appears that plaintiffs, through counsel, filed a joint "Privacy Act/Freedom of Information Act" appeal with [DOI] on March 18, 2005 — about the same time that they filed this action.").  Although the Government raises, in its view, a "very real question" about whether Plaintiffs have standing to raise Privacy Act claims, it supports this argument with no case law.  *Id.* at 20-21.  Defendants' Motion to Dismiss Counts XIII–XVIII will therefore be denied.

### C. FOIA/Privacy Act Claim

A similar analysis applies to the FOIA/Privacy Act claim in Count XIX.  Also appended to Plaintiffs' memorandum in opposition is a letter signed by William W. Wolf, FOIA Appeals Officer in the DOI, which "concerns [Plaintiffs'] June 28, 2003, [FOIA] appeal" of "the denial of [Plaintiffs'] fee waiver request" related to their "May 29, 2003, FOIA request to OAS." *Id.* ex. 6 (7/30/03 FOIA letter) at 1.  That letter notes that a response to the appeal would be delayed due to heavy workload, and informs Plaintiffs of their "right to treat the delay . . . as a final denial . . . and to seek judicial review in . . . the United States District Court for the District of Columbia." *Id.*  Therefore, Defendants' Motion to Dismiss Count XIX will also be denied.

### D. ESA Claim

In Count XXIII, Mr. Arment alleges that Defendants' revocation of his pilot card, which had the practical effect of excluding him from flying low-level missions to track populations of Colorado pikeminnow, constitutes a "taking" of endangered species within the meaning of the ESA.  Compl. ¶ 213.  He specifically alleges that Defendants should have consulted FWS to determine whether revoking his pilot card would adversely affect the pikeminnow, *id.* ¶ 215, and that their failure to do so meant that no biological assessment was performed, *id.* ¶ 216.  To remedy these alleged violations, Plaintiffs seek an injunction compelling the Government to comply with the ESA, invoking the subject matter jurisdiction of this court under Section 11(g)(1) of the ESA, codified at 16 U.S.C. § 1540(g)(1).  Compl. ¶ 217.

Section 11(g)(1) of the ESA provides, as relevant here, that "any person" may commence a civil suit on his own behalf

> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof; or
>
> . . . .
>
> (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 4 [16 U.S.C. § 1533] which is not discretionary with the Secretary.

16 U.S.C. § 1540(g)(1).  Subparagraph (1)(A) "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties — both private entities and Government agencies." *Bennett v. Spear*, 520 U.S. 154, 173 (1997).  However, no action may be commenced under subparagraph (1)(A) "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."  16 U.S.C. § 1540(g)(2)(A)(i).  Subparagraph (1)(C) "expressly authorizes suit against the Secretary, but only to compel him to perform a nondiscretionary duty under [16 U.S.C.] § 1533." *Bennett*, 520 U.S. at 173.  However, no action may be commenced under subparagraph (1)(C) "prior to sixty days after written notice has been given to the Secretary; except that such action may be brought immediately after such notification in the case of an action under this section respecting an emergency posing a significant risk to the well-being of any species of fish or wildlife or plants."  16 U.S.C. § 1540(g)(2)(C).

Following the lead of the First, Third, and Ninth Circuits, this Court has held that this sixty-day notice requirement is mandatory and jurisdictional.  *Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d 96, 104 (D.D.C. 2004); *see also Hawai'i Orchid Growers Ass'n v. USDA*, 2005 U.S. Dist. LEXIS 4548, at *8 (D.D.C. 2005).  The sixty-day notice provision serves "to put the agencies on notice of a perceived violation of the statute and an intent to sue." *Sw. Ctr. for*

*Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998).  Such notice gives agencies "an opportunity to review their actions and take corrective measures if warranted" and provides "an opportunity for settlement or other resolution of a dispute without litigation."  *Id.* As the Ninth Circuit has explained, "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA."  *Id.*; *see also Water Keeper Alliance v. U.S. Dep't of Def.*, 271 F.3d 21, 29 (1st Cir. 2001) (same); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 471 (3d Cir. 1997) (same); *Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989) (declining to give a "flexible or pragmatic construction" to the sixty-day notice requirement of the citizen suit provision in the Resource Conservation and Recovery Act).

Plaintiffs' Complaint states that "[n]otice of intent to sue was given to OAS in writing on October 2, 2003."  Compl. ¶ 212.  Their memorandum in opposition clarifies that this "notice" consists of a letter dated October 3, 2003, that Mr. Ditton sent to George Darragh Jr., the Assistant U.S. Attorney in Great Falls, Montana, who represented the Government in *Research Air I*.  Pls.' Opp'n at 41; Pls.' Opp'n ex. 8 (10/3/03 letter) at 1; Pls.' Opp'n ex. 1 (Docket in *Research Air I*) at 2.  This letter — perhaps best described as an offer to settle *Research Air I* — is plainly insufficient.

First, an ESA notice must be sent to the Secretary and, for claims under subparagraph (1)(A), also to "any alleged violator."  16 U.S.C. § 1540(g)(2)(A)(i).  Plaintiffs sent their notice only to Mr. Darragh, the AUSA in Great Falls, who is not alleged to have violated the ESA.  Requiring that notice be given to the Secretary and the violators themselves allows noncomplying agencies to bring themselves into compliance and, alternatively, enables the Secretary to direct such action.  *See Sw. Ctr.*, 143 F.3d at 520.  In view of the statute's purpose and the governing case law, the Court cannot flexibly construe the statute to permit it to be satisfied by notice to an AUSA, rather than

notice given directly to the Secretary or the violator.  *See Hallstrom*, 493 U.S. at 26.

Second, Plaintiffs' letter, which served mostly to set forth the terms of a proposed settlement in *Research Air I*, hardly gives notice of what conduct allegedly violated the ESA.  After suggesting that Plaintiffs "may" amend their *Research Air I* complaint to allege ESA violations by OAS, it states: "By OAS unilaterally denying telemetry contract flights are utilized or necessary for FWS to conserve and protect endangered species fish, particularly when FWS was calling Plaintiffs for their telemetry contract flight services after the illegal suspension, OAS took actions adversely affecting the endangered species fish and/or their critical habitats without consultation with FWS." Pls.' Opp'n ex. 8 (10/3/03 letter) at 2.  It then cites a host of statutes, regulations, and cases without analysis.  *See id.*  Nowhere does it mention the Colorado pikeminnow.  *See id.*  Although a notice letter need not "list every specific aspect or detail of every alleged violation relied upon in the complaint," it must, at a minimum, "provide sufficient information of a violation so that the Secretary or [agency] [can] identify and attempt to abate the violation."  *Sw. Ctr.*, 143 F.3d at 520. Under this standard, Plaintiffs' letter was insufficient.

Because Plaintiffs have not met this preliminary but stringent jurisdictional requirement, their ESA claim in Count XXIII will be dismissed.[9]

### IV.  CONCLUSION

Whether Mr. Arment and Research Air ever had legally cognizable claims against any or all of the Defendants stemming from OAS's revocation of Mr. Arment's pilot card is simply

---

[9]  In any event, the alleged harm to Plaintiffs from the alleged ESA violations is identified as loss of Mr. Arment's pilot card and his inability to perform low-level tracking flights for DOI. These injuries "are not jurisdictionally cognizable by this court, because they arise out of contracts with the United States."  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 (11th Cir. 1993).  As noted previously, *supra* note 8, the CDA is Plaintiffs' exclusive remedy.

beside the point.  The same Plaintiffs filed suit in Montana against the same Defendants on many of the same claims alleged here.  Those claims were dismissed with prejudice pursuant to Rule 41(b), and cannot be relitigated.  Counts I–XII and XX–XXII will be therefore dismissed.

The ESA claim, though not part of *Research Air I*, is nonetheless fatally infirm because Plaintiffs failed to provide the requisite sixty days' notice to the Secretary and any alleged violators.  Thus, Count XXIII will also be dismissed.

What remains are Mr. Arment's Privacy Act and FOIA claims.  These cannot be resolved on a motion to dismiss.  The Court will direct the Government to promptly file an Answer to Counts XIII–XIX of Plaintiffs' Complaint.

A memorializing order accompanies this memorandum opinion.


Date: March 1, 2006                                              /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge