**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RESEARCH AIR, INC.,** *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  **Civil Action No. 05-0623 (RMC)** |
| | ) |
| **DIRK KEMPTHORNE, Secretary,** | ) |
| **United States Department of the Interior,** | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment under

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("Privacy

Act"), 5 U.S.C. § 552a.  Plaintiffs Research Air, Inc. and its president and sole owner, Charles R.

Arment, seek expungement of agency records relating to a flight incident in which it was determined

that Plaintiffs broke the low-flying rules of the Department of the Interior.  Defendants, the United

States Department of the Interior ("DOI"), its Secretary and its relevant agencies and employees,

assert that DOI properly denied Plaintiffs' requests because Plaintiffs failed to follow appropriate

procedures under the FOIA and the Privacy Act when seeking the applicable records.  The Court

agrees.  It will grant Defendants' Motion for Summary Judgment [Dkt. # 61] and deny Plaintiffs'

Cross-Motion for Summary Judgment [Dkt. # 67].

## I.  FACTS

### A.    Background

Charles R. Arment is the president and sole owner of Research Air, Inc. ("Research

Air"), a specialized commercial entity and government contractor that tracks and surveys fish,

waterfowl, and wildlife for tribal, state, and federal government agencies.  Compl. ¶¶ 9-10.  The

National Business Center/Aviation Management Directorate ("AMD") (formerly the Office of

Aircraft Services ("OAS")) is an agency of DOI which manages aircraft aviation matters for DOI.

*Id.*  ¶ 12.  It enforces compliance with DOI's reporting requirements and conducts investigations of

commercial aircraft operations.  *Id.* ¶ 21.  During the period at issue, OAS was the agency charged

with regulating and reporting flight activities of commercial aircraft.  *Id.*  To perform its functions,

OAS maintained a database of approved pilots and aircraft and an Aviation Safety Communique

("SAFECOM") database, both of which were accessible to the public on the Internet during the

period in question.  *Id.*[1]  SAFECOM is an internet reporting system which allows anyone to report

an incident via the Internet.  *Id.* ¶ 33.  The report is instantly maintained on SAFECOM as an agency

record and is made publicly accessible and searchable by an individual's name.  *Id.*

        The OAS issued Mr. Arment a DOI pilot interagency qualification card and an aircraft

data approval card in 1982.  *Id.* ¶ 21.  DOI uses the pilot qualification and airplane approval cards

as permits for low-level contract commercial aircraft operations and to regulate civil commercial

aviation flight operations.  *Id.*

        In or about 2001, DOI hired Research Air and Mr. Arment to track Colorado

pikeminnow, an endangered species, in the Green River in Colorado and Utah during winter weather

for the DOI Fish and Wildlife Service's ("FWS") Colorado River Fishery Project.  *Id.* ¶ 3.  In

December 2001, Mr. Arment conducted low-level flight tracking missions using radio frequencies

that detected signals from transmitters embedded in the fish in the ice-covered river.  *Id.* ¶ 47.

---

        [1] The SAFECOM database was available at http://www.oas.gov or
http://www.safeom.gov, and the list of approved pilots and aircraft was available at
http://www.oas.gov/source.  *Id.*  Compl. ¶ 21.

In March 2002, OAS imposed an indefinite suspension upon Mr. Arment's pilot card for an "incident" that occurred on December 13, 2001 near Vernal, Utah while Mr. Arment was flying the low-level tracking missions for the Colorado River Fishery Project. *Id.* ¶¶ 47, 50.  On that date, Mr. Arment flew as low as 50 feet above ground level to locate the Colorado pikeminnow for FWS and maneuvered his plane under a set of powerlines that were approximately 60 to 165 feet above the ground.  *Id.* ¶¶ 47, 52 (citing Compl., Ex. 6 (May 6, 2003 Letter from OAS West Area Office Director Steven R. Smith to Charles M. Arment ("May 6, 2003 Suspension Letter") at 1.[2]  Mr. Arment did not report the incident to OAS.  *See id.*, Ex. 5 (Feb. 24, 2003 Letter from OAS West Area Office Director Steven R. Smith to Charles M. Arment).

After the December 13, 2001 low-flying incident was reported to OAS by a third-party, then-OAS Aviation Safety Manager Robert Galloway sent a letter to Mr. Arment requesting that he return his pilot card to OAS and cooperate with OAS in the investigation of the December 13, 2001 event.  *See id.*, Ex. 3 (Mar. 27, 2002 Letter from OAS Aviation Safety Manager Robert Galloway to Charles M. Arment).  During the investigation, Steven R. Smith, the then-Director of West Area OAS, sent a series of letters to Mr. Arment seeking an explanation for the incident and failure to report.  *Id.* ¶¶ 49-53.  In his final letter to Mr. Arment, Mr. Smith notified Mr. Arment that he had completed his evaluation of the event and determined that Mr. Arment's "actions, as they relate to this incident with potential, demonstrate poor judgment and possible disregard for the philosophy and guidance provided by the Aircraft Rental Agreement (ARA) designed to promote safety and enhance accident prevention."  May 6, 2003 Suspension Letter at 1.  Mr. Smith further

---

[2] Mr. Arment asserts that it was necessary to fly so low to the ground because of weak frequencies emitting from the fish underneath the ice.

explained that "[p]rior to consideration of any reapplication to fly for the Department of the Interior,

you will be required to provide this office with written verification showing successful completion

of formal structure courses" for which Mr. Arment would be responsible to pay. *Id.* at 3-4. The

suspension effectively prevented Mr. Arment and Research Air from obtaining further governmental

and private sector low-level commercial aviation flight contracting because the suspension was

published on the Internet through the SAFECOM Internet database and the list of OAS-approved

pilots. *Id.* ¶¶ 4, 6. For his part, Mr. Arment argues that he and Research Air committed no

violations; that he did not consider the event on December 13, 2001 to be an "incident" that he was

required to report; that he acted in full compliance with applicable regulations and instructions of

DOI; and that the Defendants collected and maintained inaccurate, irrelevant, outdated, incomplete,

and false information about Plaintiffs.

## B.    FOIA Request and Appeal

On May 29, 2003, Plaintiffs' former counsel, Michael H. Ditton[3], sent to Mr. Smith

a letter entitled "Freedom of Information Act/Privacy Act Requests" asking for:

> any and all agency records related to [Mr. Arment, as known by
> various similar names, and Research Air], specifically including the
> administrative record in 2N002 including any investigative report,

---

[3] Having been advised that Michael H. Ditton was temporarily suspended from practice before the United States District Court for the District of Columbia, effective June 14, 2006, pursuant to LCvR 83.16(c), the Court issued an Order staying the case and advising Plaintiffs that because Research Air is a corporation, not an individual, Plaintiffs must obtain new counsel or withdraw their Complaint. *See* Order filed Aug. 24, 2006 [Dkt. # 72] at 1-2. Mr. Arment explained that he would not be able to afford substitute counsel and requested that the Court proceed to the merits of his case. *See* Sept. 20, 2006 Letter from Charles R. Arment [Dkt. # 73]. The Court construed this request as an indication that, to the extent possible, Mr. Arment wished to proceed *pro se*. *See* Order filed Oct. 18, 2006 [Dkt. # 74]. The Court therefore lifted the stay and directed Defendants to respond to Plaintiffs' Cross-Motion for Summary Judgment and to comment on whether Research Air's claims may survive without substitute counsel. *See id.*

> and any other record within the Department of Interior's possession,
> custody or control relating to the aforementioned persons or entities.
> I represent Mr. Arment and Research Air, Inc. and make these
> requests on their behalf.
>
> I request waiver of fees pursuant to the cited statutes and
> implementing regulations.  The information requested is not for a
> commercial purpose.  The best interests of the Government and the
> public interest mandate release of this information.

Def.'s Mot. for Summ. J., Ex. 1 (Freedom of Information Act/Privacy Act Requests Letter ("FOIA

Letter")).[4]  On June 9, 2003, Ms. Leslie Laraway, OAS's FOIA Officer, confirmed by e-mail the

conversation she had with Mr. Ditton on June 5, 2003, about his May 29, 2003 request.  Def.'s Mot.

for Summ. J., Ex. 2 (June 9, 2003 E-mail from Leslie Laraway to Michael H. Ditton ("June 9, 2003

E-mail")).  In the e-mail Ms. Laraway stated that the "approximate" cost of producing the requested

records would be $810.25 and suggested that Mr. Arment might "modfiy or narrow the scope of his

request to reduce associated costs."  *Id.*  She further advised that:

> in order to grant a fee waiver request, OAS must be able to determine
> that disclosure of the requested information will contribute
> significantly to public understanding.   The Department of the
> Interior's FOIA regulations state that we can waive fees if
> "disclosure of all or part of the information is in the public interest
> because its release—(1) Is likely to contribute significantly to public
> understanding of the operations and activities of the government; and
> (2) Is not primarily in the commercial interest of the requester."  43
> C.F.R. § 2.19(b).  Based on that criteria, I must deny your request.
>
> Department regulations state that it will not begin to process a FOIA
> until fee issues are resolved.  *See* 43 C.F.R. §§ 2.8(b), 2.12(b), and
> 2.18(d).  The twenty day time period for response only begins once
> the request is "perfected," i.e., all issues defining the FOIA request
> are resolved.  Furthermore, because you have not been granted a fee

---

[4] The "administrative record in 2N002" refers to OAS's investigation of the December
13, 2001, flight – "Incident With Potential No. 02-2N002-A-FWS."  *See* Pls.' Compl., Ex. 4
(Mike McCurry/OAS Mem. of Apr. 4, 2002, to William Butler, FWS).

> waiver at this time, OAS cannot begin processing your request until
> it has received written assurance of your willingness to pay the fees
> associated with your request.  *See* 43 C.F.R. § 2.18(a).

Defs.' Mot. for Summ. J., Ex. 2.

On June 9, Mr. Ditton wrote to Mr. Smith, advising him that Ms. Laraway's e-mail was "an unacceptable response to [his] request for the administrative record" and renewed "[his] request on behalf of Mr. Arment for a copy of the administrative record."  *Id.*, Ex. 3 (June 9, 2003 Letter from Michael H. Ditton to Steven R. Smith).  On June 16, 2003, Ms. Laraway responded to Mr. Ditton's June 9 letter to Mr. Smith, and reiterated that the fee issues had to be addressed before she could begin processing his request.  *See id.*, Ex. 4 (June 16, 2003 Letter from Leslie A. Laraway to Michael H. Ditton).  She also advised Mr. Ditton that he "may appeal this response" by writing to the Department of the Interior Freedom of Information Act Appeals Officer.  *Id.*

By letter dated June 28, 2003, Mr. Ditton appealed OAS's decision that Plaintiffs were not entitled to a fee waiver.  *Id.*, Ex. 5 (June 28, 2003 Freedom of Information Act/Privacy Act Requests Appeal Letter).[5]  He demanded, *inter alia*, that OAS "furnish [him] with the authority that justifies OAS demanding prepayment and refusing waiver of fees for release of documents under the Privacy Act to Mr. Arment."  *Id.*  On July 1, 2003, Ms. Laraway wrote to Mr. Ditton again, referencing his letters to Mr. Smith on June 24 and June 28, 2003, in which Mr. Ditton characterized OAS as having demanded prepayment before processing the FOIA request.  *Id.*, Ex. 6 (July 1, 2003 Letter from Leslie A. Laraway to Michael H. Ditton).  In the July 1 letter, Ms. Laraway called Mr. Ditton's attention to her June 9 email in which she wrote that "'OAS cannot begin processing your request until it has received written assurance of your willingness to pay the fees with your request.'"

---

[5] The appeal was logged July 2, 2003.  Defs.' Mot. for Summ. J., Ex. 5.

*Id.* (quoting June 9, 2003 E-mail).  She then emphasized that "[a]t no time did OAS demand prepayment as you claim." *Id.*  She also advised that she had forwarded Mr. Ditton's June 28 appeal letter to the DOI FOIA Appeals Officer and that OAS no longer had jurisdiction over the matter. *Id.*  On July 30, 2003, the FOIA Appeals Officer acknowledged receipt of the FOIA appeal and advised Plaintiffs that the DOI had a large backlog of appeals and would be delayed in its response. *Id.*, Ex. 7 (July 30, 2003 Office of the Secretary Letter from William W. Wolf to Michael H. Ditton). The FOIA Appeals Officer further advised that this delay could be regarded as an appealable final denial, but expressed his hope that Mr. Ditton would await a substantive decision.  *Id.*  No such decision was issued prior to the filing of the instant action.

C.     **Privacy Act Request, Appeal and Decision**

On January 31, 2005, Mr. Ditton sent a letter on behalf of Mr. Arment to the OAS office in Boise, Idaho, including Mr. Smith and Mr. Galloway, seeking, pursuant to the Privacy Act, "amendment and correction of agency records and an accounting of all disclosures."  *See id.*, Ex. 8 (Jan. 31, 2005 Privacy Act Amend., Correction, Accounting Requests/Pet. ("Privacy Act Pet.")) at 1.  He listed a series of "agency records of which Requesters/Petitioners are aware are not accurate, relevant, timely or complete," and demanded "expungement of all of these records and records based upon these records."  *Id.* at 2.

In a letter dated February 11, 2005, OAS's then-Acting Associate Director, Robert Lewis denied Mr. Ditton's request on the basis that, under the Privacy Act, "only the individual who is the subject of the records may request access, amendment, and accounting of disclosures."  *Id.*, Ex. 9 (Feb. 11, 2005 Letter from Robert H. Lewis to Michael H. Ditton) (citing 5 U.S.C. § 552a(d)). He explained that

> [a]lthough you assert that you represent Mr. Arment and Research
> Air, you have provided no written documentation from Mr. Arment
> indicating this relationship and his consent for you to gain access to
> or seek amendment of Privacy Act records pertaining to him.
> Therefore, you are not entitled to request access to, or amendment of
> any records pertaining to Mr. Arment.

*Id.*  Mr. Lewis also noted that Research Air is not an "individual" under the Privacy Act and is

"therefore not covered by its provisions." *Id.*  Finally, he noted that three of the five documents to

which Mr. Ditton referred in his letter "are not contained within Privacy Act systems of records and

are therefore not covered by the Privacy Act." *Id.*  Mr. Lewis also advised Mr. Ditton of his right

to appeal to DOI's FOIA and Privacy Act Appeals Officer. *Id.*

On March 18, 2005, Mr. Ditton appealed "the February 11, 2005 total denial of

Charles R. Arment and Research Air, Inc.'s . . . requests, petitions, and demands under the Privacy

Act . . . to amend and correct inaccurate, untimely, irrelevant, and false information about Petitioners

contained in agency records. . . ." *Id.*, Ex. 10 (Mar. 18, 2005 Privacy Act/FOIA Appeals Letter).

Regarding the question of representation and consent, Mr. Ditton wrote:  "I have represented [Mr.

Arment and Research Air] before Interior, the GAO and in federal court since May 2003, and Mr.

Galloway knows this." *Id.*  Mr. Ditton concluded by stating that "I presume Interior still has an

appeals backlog and will not be able to decide this appeal timely. . . . Accordingly, we are proceeding

in federal district court." *Id.*

Although Mr. Ditton filed his clients' appeal 24 working days after OAS's decision

rather than within 20 working days after OAS's decision, as is required by DOI's regulations, *see*

43 C.F.R. § 2.74(b), because OAS's February 11, 2005 decision letter had incorrectly stated that the

time to appeal was 30 working days, the DOI FOIA and Privacy Act Appeals Office accepted the

appeal as timely.  *See* Defs.' Mot. for Summ. J., Ex. 11 (Apr. 15, 2005 Letter from Darrell R.

Strayhorn to Michael H. Ditton).

By letter dated April 19, 2005, the DOI FOIA and Privacy Appeals Office denied Mr.

Ditton's appeal.  The letter stated, in relevant part, that:

> After fully reviewing the issues you presented in the appeal, the Department concludes that you do not have any rights under the Privacy Act to request that the OAS or the Department amend, provide an accounting of, or notify you of the existence of any Privacy Act-protected records pertaining to Mr. Arment.
>
> . . . .
>
> Amendment, Accounting, and Notification of Privacy Act-Protected Records
>
> . . . .
>
> To the extent the records you cite in the petition are covered by the Privacy Act, these records pertain to Mr. Arment, not you. Without Mr. Arment's written authorization permitting you to request on his behalf the amendment, accounting of disclosures, or notification of the existence of any Privacy Act-protected records pertaining to him, you do not have any rights under the Privacy Act to request either the OAS or the Department take any of the actions you request here.
>
> While you purport to have represented Mr. Arment in various other matters, you have not submitted any evidence from Mr. Arment authorizing you to act on his behalf with respect to Privacy Act matters.  The OAS advised you in its February 11, 2005, letter of this deficiency. However, when you filed the appeal, you still failed to submit any evidence from Mr. Arment giving you any rights under the Privacy Act to act on his behalf. Since you do not have any Privacy Act rights with respect to Mr. Arment's records, there is no action for the Department to take on these three issues on appeal.
>
> . . . .
>
> Inadequate Petition
>
> As a final matter, please note that even if you submit evidence from Mr. Arment giving you any rights under the Privacy Act on his behalf, your January 31, 2005, petition did not include all of the

> information the Department's Privacy Act regulations ("regulations")
> require a petitioner to submit with a petition. Specifically, in addition
> to "stating in detail the reasons why the petitioner believes the record,
> or objectionable portion thereof, is not accurate, relevant, timely, or
> complete," the regulations also require a petitioner to submit with the
> petition "copies of documents or evidence relied upon in support of
> these reasons." *See 43 C.F.R. § 2.71(b)(2)*. You did not provide any
> documentation that demonstrates that the records are not accurate,
> relevant, timely, or complete. Further, your mere statements and
> explanations in the petition that the records are not accurate, relevant,
> timely, or complete do not amount to actual evidence. Therefore, if
> you wish to re-submit your petition to OAS with authorization from
> Mr. Arment to request the amendment of records pertaining to him,
> you must also submit documents or evidence that support your
> reasons for requesting an amendment.

Defs.' Mot. for Summ. J., Ex. 12 (Apr. 19, 2005 Letter from DOI Office of the Solicitor to Michael

H. Ditton).   Prior to the final decision on their Privacy Act appeal to DOI, Plaintiffs filed a

Complaint in this Court on March 24, 2005, seeking damages and declaratory and injunctive relief

from DOI's allegedly unauthorized collection and public dissemination of records pertaining to Mr.

Arment and Research Air.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment

is properly granted against a party that "after adequate time for discovery and upon motion . . . fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.  ANALYSIS

Defendants move for summary judgment on Plaintiffs' FOIA and Privacy Act claims, arguing that Plaintiffs failed to comply with the procedural requirements for release or amendment

of records under the applicable regulations.  Defendants also contend that because Plaintiffs are no longer represented by counsel, Research Air's claims must be dismissed.  Mr. Arment asks the Court to proceed to the merits of his complaint, *i.e.*, that DOI unlawfully maintained and made available to the public inaccurate records pertaining to him and Research Air in violation of the Privacy Act.

### A.     Research Air

As a preliminary matter, Research Air must be dismissed from this case because it is no longer represented by counsel.  Parties appearing in federal courts "may appear and conduct their own cases personally or by counsel[.]"  28 U.S.C. § 1654.  This statute has uniformly been interpreted to mean that corporations must be represented by licensed counsel in federal court.  *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel."). *See also Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 166 n.1 (D.C. Cir. 1990) ("As a corporation, Bristol could not appear *pro se*.").  Mr. Arment advised the Court that he would not be able to retain new counsel for Research Air.  Because Mr. Arment may not maintain this suit on behalf of Research Air, the Court will dismiss Research Air's claims.

### B.     FOIA Claims

DOI asserts that because Mr. Arment sought records relating to Research Air, a commercial enterprise, and because Mr. Arment's prior counsel failed to explain how disclosure of OAS records relating to Research Air and Mr. Arment would contribute to public understanding of the operations of the government, OAS's FOIA Officer appropriately denied a fee waiver for the FOIA search.  An agency must waive fees for processing a FOIA request when "[1] disclosure of the information is in the public interest because it is likely to contribute significantly to public

understanding of the operations or activities of the government and [2] is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

FOIA also empowers each agency to "promulgate regulations . . . specifying the schedule of fees applicable to the processing of [FOIA] requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(I). A court must consider both the statute and the regulations promulgated by the agency when determining whether a fee waiver was properly denied. *See Campbell v. DOJ*, 164 F.3d 20, 35 (D.C. Cir. 1998); *VoteHemp, Inc. v. DEA*, 237 F. Supp. 2d 55, 59 (D.D.C. 2002). Pursuant to the authority granted by FOIA, DOI promulgated a regulation stating that DOI "will waive fees (in whole or part) if disclosure of all or part of the information is in the public interest because its release–(1) Is likely to contribute significantly to public understanding of the operations or activities of the Government; and (2) Is not primarily in the commercial interest of the requester." 43 C.F.R. § 2.19(b). DOI also promulgated regulations and guidelines for evaluating whether a fee waiver will be granted. *See* 43 C.F.R. Pt. 2 App. D. These regulations state, in relevant part:

> In deciding whether you are entitled to a fee waiver, the agency will consider the criteria in paragraphs (1) through (4), below. Your request for a fee waiver must address each of these criteria.
>
> (1) How do the records concern the operations or activities of the Government?
>
> (2) If the records concern the operations or activities of the Government, how will disclosure likely contribute to public understanding of these operations and activities?
>
> > (i) How are the contents of the records you are seeking meaningfully informative on the Department's or a bureau's operations and activities? Is there a logical connection

between the content of the records and the operations or activities you are interested in?

(ii) Other than enhancing your knowledge, how will disclosure of the requested records contribute to the understanding of the public at large or a reasonably broad audience of persons interested in the subject?

(iii) Your identity, vocation, qualifications, and expertise regarding the requested information (whether you are affiliated with a newspaper, college or university, have previously published articles, books, etc.) may be relevant factors. However, merely stating that you are going to write a book, research a particular subject, or perform doctoral dissertation work, is insufficient, without demonstrating how you plan to disclose the information in a manner which will be informative to a reasonably broad audience of persons interested in the subject.

(iv) Do you have the ability and intention to disseminate the information to the general public or a reasonably broad audience of persons interested in the subject?

. . .

(3) If there is likely to be a contribution to public understanding, will release of the requested records contribute significantly to public understanding?

(i) Is the information being disclosed new?

(ii) Does the information being disclosed confirm or clarify data which has been released previously?

(iii) How will disclosure increase the level of public understanding of the operations or activities of the Department or a bureau that existed prior to disclosure?

(iv) Is the information publicly available? If the Government previously has published the information you are seeking or it is routinely available to the public in a library, reading room, through the Internet, or as part of the administrative record for a particular issue . . ., it is less likely that there will be a significant contribution from release.

(4) Would disclosure be primarily in your commercial interest?

> (i) Do you have a commercial interest that would be furthered by disclosure? . . .

> (ii) If you do have a commercial interest that would be furthered by disclosure, would disclosure be primarily in that interest?   Would the public interest in disclosure be greater than any commercial interest you or your organization may have in the documents?  If so, how would it be greater?

> (iii) Your identity, vocation, and the circumstances surrounding your request are all factors to be considered in determining whether disclosure would be primarily in your commercial interest. . . .

*Id.*

Judicial review in "any action by a requester regarding the waiver of fees" is *de novo*, but is limited to the record that was before the agency.  5 U.S.C. § 552(a)(4)(A)(vii); *Campbell v. DOJ*, 164 F.3d at 35.  The burden is on the plaintiff to demonstrate that the requirements for a fee waiver are satisfied.  *Larson*, 843 F.2d at 1483; *Judicial Watch, Inc. v. DOJ*, 185 F. Supp. 2d 54, 60 (D.D.C. 2002).

Mr. Arment's request for a fee waiver, as presented through Mr. Ditton's letters, utterly failed to satisfy the criteria under the statute and regulations for granting a fee waiver.  The record is devoid of any explanation by Mr. Arment as to how the requested records pertaining to Mr. Arment and Research Air would contribute to the public understanding of government operations or how the requests were not primarily in Mr. Arment's commercial interest.  The FOIA officer repeatedly advised Mr. Arment that he must either agree that he (or Research Air) would pay the fee or explain why he was entitled to a fee waiver, but his counsel failed to do either; rather, he

continued to clamor that DOI's demand for an explanation prior to granting a fee waiver was "an unacceptable response to [his] request for the administrative record." *See*, *e.g.*, Defs.' Mot. for Summ. J., Ex. 3 (June 9, 2003 Letter from Michael H. Ditton to Steven R. Smith). For this reason alone, Mr. Arment did not meet his burden of establishing that a fee waiver was appropriate.

Moreover, Mr. Arment sought records relating to incidents involving him and Research Air for the apparent purpose of expunging reported flight violations from their records in order to restore Mr. Arment's good standing in the commercial aviation community and allow him to resume his low-level commercial flight tracking business. Mr. Arment even argues that he sought the records in order to "adequately defend" himself and "confront [his] previously undisclosed accusers." Pls.' Opp'n to Def.'s Mot. for Summ. J. at 28. This argument leads one to conclude that the records were requested primarily to benefit the commercial interests of Mr. Arment. DOI therefore acted within its discretion in denying the fee waiver. DOI did not claim any exemption for withholding the records; it merely directed Mr. Arment to follow the statutory and regulatory requirements for obtaining such records. He (or more precisely, his counsel) failed to do this. Because Mr. Arment rejected the notion that he would be required to pay a fee, DOI properly refused to process his FOIA requests.[6]

### C.      Privacy Act Claims

Mr. Arment also asserts claims against DOI under the Privacy Act, including, *inter*

---

[6] Despite ardent assertions by Mr. Arment that DOI demanded prepayment of FOIA processing fees, DOI never demanded prepayment, but rather demanded only that Mr. Arment either narrow his request in order to reduce their estimated costs or commit to future payment for the costs incurred by DOI in processing the search request and producing responsive materials. *See* Defs.' Mot. to Dismiss, Ex. 6 (July 1, 2003 Letter from Leslie A. Laraway to Michael H. Ditton) ("At no time did OAS demand prepayment as you claim.").

*alia*, unauthorized collection of information and maintenance of agency records; unauthorized disclosure and use of information contained in agency records; failure to maintain accurate, complete, timely and relevant records; failure to amend agency records; and failure to release agency records to him for inspection. The validity of all of Mr. Arment's Privacy Act claims (other than the failure to release agency records for inspection) depends on the information that is actually contained in DOI's records. In order to provide factual support for his claims, Mr. Arment must proffer the records as evidence. In the absence of such evidence, DOI may succeed on summary judgment. *See Celotex*, 477 U.S. at 322. Mr. Arment may not rely solely on allegations or conclusory statements to defeat a motion for summary judgment, or, for that matter, to obtain summary judgment. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). For these reasons, Mr. Arment invoked the Privacy Act to obtain DOI's records on him.

By letter dated January 31, 2005, Mr. Ditton demanded, pursuant to the Privacy Act, "amendment and correction of agency records and an accounting of all disclosures" pertaining to the Plaintiffs' DOI files. Privacy Act Pet. at 1. He listed a series of "agency records of which Requesters/Petitioners are aware are not accurate, relevant, timely or complete." *Id.* Under the Privacy Act, only the "individual who is the subject of the records" may request access, amendment, and accounting of disclosures. 5 U.S.C. § 552a(d)(2). Although DOI was aware that Mr. Ditton represented Mr. Arment in related matters, and although Mr. Ditton stated that he represented Mr. Arment in his Privacy Act requests, Mr. Ditton did not provide any written documentation from Mr. Arment indicating that DOI was authorized to release the records to Mr. Ditton or amend the records. If the individual to whom a Privacy Act-protected record pertains requests that DOI amend such record, DOI Privacy Act regulations require such a request to be in writing. 43 C.F.R. § 2.71(b)(1).

-17-

DOI informed Mr. Ditton that without written authorization from Mr. Arment, it could not process the request.  Despite DOI's advice regarding the deficiency in the request, Mr. Arment did not remedy the defect in his request.  Without any sort of written authorization from Mr. Arment, DOI could not process Mr. Ditton's request without exposing itself to possible liability for providing information to a third-party requester without proper authorization.  *See* 5 U.S.C. 552a(i)(1).  DOI therefore acted properly in denying Mr. Ditton's Privacy Act request in the absence of written authorization from Mr. Arment.

Even if Mr. Ditton were authorized to make Privacy Act-related requests on behalf of Mr. Arment, Mr. Arment's petition for DOI to amend its records pertaining to him was still inadequate.[7]  DOI regulations require that a petitioner state in detail the reasons why he believes the record, or objectionable portions thereof, is not accurate.  43 C.F.R. § 2.71(b)(2).  Additionally, the petitioner must submit with his petition copies of documents or evidence that support his claims of inaccuracy or incompleteness.  *Id.*  The record indicates that Mr. Ditton did neither.  He wrote a brief letter to DOI stating which records were inaccurate and "demand[ing] [their] expungement," but he failed to explain in any detail why the records were inaccurate; rather, he merely provided conclusory statements contradicting the information he believed was contained in agency records.  *See* Privacy Act Pet. at 2 (stating, in opposition to purported agency records concerning an alleged unsafe or inappropriate low-level flying in Yellowstone National Park in January 2000, that "Petitioners never flew unsafe, inappropriate or contrary to any rule or regulation in Yellowstone National Park").

---

[7] Although the Court has already indicated that it will dismiss Research Air's claims because it cannot proceed without counsel, the Court notes that because Research Air is not an "individual," as defined in the Privacy Act, it has no Privacy Act rights.  *See* 5 U.S.C. § 552a(a)(2), (d)(1)-(4).

Additionally, the record is devoid of any evidence submitted to DOI supporting Mr. Arment's assertions that the records are inaccurate.  Thus, on the record before it, DOI properly refused to amend its records.

Despite his failure to follow the proper procedures under the Privacy Act to obtain and dispute DOI's records pertaining to him, Mr. Arment asks the Court to reach the merits of his case.  He states that DOI

> has twice now delayed resolution of this case by unfairly focusing on my attorney, instead of the merits of my case.  I thought federal courts were available to all to obtain justice without delay.  For over three years I have been denied my day in court although I have always proceeded in good faith.

Sept. 20, 2006 Letter from Charles R. Arment.  Mr. Arment may very well have a legitimate grievance with DOI, but without the records that Mr. Arment claims are inaccurate and without evidence to rebut those records, Mr. Arment cannot provide evidence to substantiate his claims that DOI violated the Privacy Act in collecting and maintaining records pertaining to him.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Dkt. # 61] will be granted and Plaintiff's Cross-Motion for Summary Judgment [Dkt. # 67] will be denied.  A memorializing order accompanies this Memorandum Opinion.

Date: December 11, 2008                         /s/
                                       ROSEMARY M. COLLYER
                                       United States District Judge